Filing # 42379084 E-Filed 06/06/2016 04:16:54 PM

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

Case No.:
Division:

MICHELLE HEMBROCK,

    Plaintiff,

vs.

BAPTIST HEALTH SYSTEM, INC. d/b/a
BAPTIST MEDICAL CENTER- DOWNTOWN,
UNIVERSAL HEALTH SERVICES, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
TBJ BEHAVIORAL CENTER, LLC d/b/a
RIVER POINT BEHAVIORAL HEALTH,
HENRY LEPELY, M.D.,
PAUL FERRIS RASHID, M.D.,
ROXANNE CHARBONEAU,
JOHN DOES 1-5, and
JANE DOES 1-5,

    Defendants.

_____/

## COMPLAINT

COMES NOW the Plaintiff, MICHELLE HEMBROCK, by and through her undersigned counsel, and files this Complaint and sues Defendants, BAPTIST HEALTH SYSTEM, INC. d/b/a BAPTIST MEDICAL CENTER- DOWNTOWN, UNIVERSAL HEALTH SERVICES, INC., PREMIER BEHAVIORAL SOLUTIONS, INC., TBJ BEHAVIORAL CENTER, LLC d/b/a RIVER POINT BEHAVIORAL HEALTH, HENRY LEPELY, M.D., PAUL FERRIS RASHID, M.D., ROXANNE CHARBONEAU, JOHN DOES 1-5, and JANE DOES 1-5. In further support of this cause of action, Plaintiff would state and allege as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages in excess of $15,000.00, exclusive of interests, costs, and attorney's fees.

2. This is an action to recover damages on behalf of Michelle Hembrock arising from battery, falsely imprisoning, deprivation of Constitutional and statutory rights in violation of 42 U.S.C. § 1983, and violation of the Florida Civil Remedies For Criminal Practices Act, Florida Statutes § 772.103, (hereinafter "FCRCPA").

3. The Court has jurisdiction over the subject of, and the parties to this action as the Defendants do or transact business in Duval County, Florida and the events giving rise to the claim arose in Duval County, Florida.

## PARTIES

4. Plaintiff Michelle Hembrock ("Plaintiff") is a resident of Duval County, Florida and was a patient at Baptist Medical Center – Downtown from April 20, 2016 until April 21, 2016. Plaintiff was a patient at River Point Behavioral Health from on April 21, 2016 until April 26, 2016.

5. Defendant Baptist Health System, Inc. (d/b/a Baptist Medical Center – Downtown) ("Baptist") is a Florida corporation with its principal place of business in Florida and may be served through its registered agent Harvey Granger, Esquire at 841 Prudential Drive, Suite 1802, Jacksonville, FL 32207.

6. Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406. UHS subsidiaries own and operate more than 235 acute care and behavioral health facilities and surgery centers in 37 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and the United Kingdom.

7. Defendant Premier Behavioral Solutions, Inc. ("Premier") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406.

2

8. Defendant TBJ Behavioral Center, LLC d/b/a River Point Behavioral Health ("River Point") is a Delaware limited liability company with its principal place of business at 6300 Beach Boulevard, Jacksonville, Duval County, Florida.

9. River Point is a 93-bed residential mental health treatment facility located at 6300 Beach Boulevard, Jacksonville, Duval County, Florida. River Point is a receiving facility designated by the Florida Department of Children and Families pursuant to Florida Statutes § 394.461 (2015).

10. Defendants Premier, TBJ, and River Point are subsidiaries of UHS, and affiliates of each other. Unless otherwise denoted, these specific defendants shall be collectively referred to as "UHS Defendants."

11. Defendant Henry Lepely, M.D. (hereinafter "Lepely") was employed by or an agent of Defendant UHS in the capacity of a physician at River Point.

12. Defendant Paul Ferris Rashid, M.D. (hereinafter "Rashid) was employed by or an agent of Defendant UHS in the capacity of a physician at River Point.

13. Defendant Roxanne Charboneau (hereinafter "Charboneau") was employed by or an agent of Defendant UHS at River Point.

14. Defendants John Doe 1-3 were employees or agents of Defendant Baptist. Defendants John Doe 4-5 and Jane Doe 1-5 were employees or agents of Defendant UHS.

## FACTUAL ALLEGATIONS

15. The Florida Mental Health Act, Florida Statutes §§ 394.451-394.47891 (2015). (hereinafter the "Baker Act") allows that a person may be involuntarily examined for up to 72 hours for persons who have a mental illness, are unable or unwilling to consent to voluntary examination, and, as a result of the mental illness, pose a risk of serious bodily harm to themselves or others in the near future.

3

16. Florida Statutes § 394.463(2)(f) provides for an examination period of no more than 72 hours.

17. Florida Statutes § 394.463(2)(i) states that:

Within the 72-hour examination period . . . one of the following actions must be taken, based on the individual needs of the patient:
1. The patient shall be released, unless he or she is charged with a crime. . .;
2. The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment;
3. The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient. . . ; or
4. A petition for involuntary placement shall be filed in the circuit court when outpatient or inpatient treatment is deemed necessary.

18. On April 20, 2016, Plaintiff was admitted at Defendant Baptist under the Baker Act.

19. While going to have a cigarette at Defendant Baptist, Plaintiff was violently tackled by Baptist security guards.

20. Upon seeing Plaintiff being violently accosted a female doctor yelled at the security guards to get off of Plaintiff.

21. Upon information and belief, the tackling of Plaintiff was captured on Defendant Baptist's surveillance cameras.

22. Upon information and belief, Baptist allowed the surveillance footage to be destroyed.

23. Upon information and belief, it is Defendant Baptist's regular business practice to allow surveillance footage to be taped over and destroyed when there are events that will likely be litigated in either criminal or civil courts.

24. UHS is one of the largest owners of mental health facilities in the United States.

25. With few exceptions, Defendant UHS restricts admissions to Defendant River Point to people who qualify for reimbursement of their medical costs from private insurance or a government funded healthcare program.

26. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau implemented a scheme of holding patients with healthcare coverage through private insurance or government funded healthcare programs, without medical justification or longer than medically necessary under the guise of the Baker Act.

27. Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau implemented a systematic census to determine when patients' benefits will expire.

28. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau maintain discharge lists of patients whose insurance have run out and encourages its behavioral health facilities to discharge these patients regardless of their condition.

29. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau discharge patients that they are illegally detaining under the guise of the Baker Act, when the patient obtains legal representation, all to avoid the scrutiny of Florida's state courts.

30. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau target patients that they believe cannot advocate for themselves, lack a familial support system that can advocate for them, or lack self-awareness and the propensity to scrutinize medical providers.

31. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau torment patients to obtain reactions intended to provide justification for Baker Act examination and involuntary placement.

32. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau falsify mental health records to manufacture justification for holding patients pursuant to the Baker Act.

33. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau mislead, intimidate, and/or threaten patients into signing a document "consenting" to voluntary placement.

34. On April 21, 2016, Plaintiff was transferred by ambulance to River Point Behavioral Health.

35. Defendant River Point has facility rules that the patients are required to adhere else the patients lose privileges.

36. Agents and employees of the UHS Defendants do not inform patients of the rules and use infractions to create the intentional infliction of emotional distress, as a form of torture, and to justify keeping patients longer than required.

37. On Plaintiff's first day at Defendant River Point, she was not informed of any rules and privileges were taken away to create the intentional infliction of emotional distress, as a form of torture, and to justify keeping her longer than required. Nurses would routinely mock and imitate patients.

38. As part of the racketeering activity, Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau unlawfully involuntarily confined Plaintiff for the purposes of making and submitting a false or fraudulent claim(s) to Plaintiff's insurer for reimbursement of medically unnecessary services.

39. At the time Plaintiff arrived at River Point, she did not meet the criteria for involuntary placement pursuant to the Baker Act. While involuntarily confined at River Point, Plaintiff was under the care and treatment of Defendants Lepely and Rashid. Defendant

Lepely's "examination" of Plaintiff on April 22, 2016 lasted for 5-7 minutes. Defendant Rashid's "examination" of Plaintiff on or about April 23, 2016 lasted for 5-7 minutes. Plaintiff was not, during the time of her involuntary confinement, dangerous to herself or others and Defendants UHS, Premier, River Point, Lepely, Rashid, and Charboneau had no basis upon which to continue Plaintiff's involuntary confinement in River Point. Plaintiff had not been charged with a crime at any time during her involuntary confinement. Following an initial examination, Plaintiff should have been released.

40. On April 23, 2016 while speaking with "Lionel" he indictated that "she doesn't belong there", that he would try to speak to the doctor, and that "if Lepely says you can't go home I will tell you how to force his hand."

41. On or about April 23, 2016, Plaintiff was asked to sign consent for voluntary confinement because the 72-hour examination period expired. When Plaintiff would not sign the consent, Jane Doe 1 said "Sign her up for ECT" (electroconvulsive therapy or formerly known as electroshock therapy) to create emotional distress and to pressure Plaintiff into signing the consent.

42. When Plaintiff asked to be discharged, Defendant Lepely threatened her stating "I am a lawyer...don't try me...when I go to court...I make the doctors look this small" after which he put his index finger to his thumb to express "small."

43. Through their employment by the UHS Defendants, Defendant Lepely, Defendant Rashid, Defendant Charboneau, Defendants John Doe 4-5, and Defendants Jane Doe 1-5 were acting under color of state law, to wit the Baker Act, by involuntarily confining Plaintiff in River Point, a designated Baker Act receiving facility.

44. Plaintiff was involuntarily confined until about 10:00a.m. on April 26, 2016, at which time she was discharged.

45. All conditions precedent to this action have occurred or have been waived.

## COUNT I

### BATTERY AGAINST JOHN DOES 1-3

46. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, and 45, and incorporates them herein by this reference.

47. Defendants John Does 1-3 intentionally acted individually and in concert to cause harmful and offense contact with Plaintiff's body, to wit, tackling Plaintiff.

48. As a result of contact by Defendants John Does 1-3 with Plaintiff, she suffered physical injuries that required medical attention.

49. Plaintiff suffered mental anguish and humiliation due to her battery.

50. Plaintiff reserves the right to move for leave to amend Count I to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish and humiliation; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT II

### ASSAULT AGAINST JOHN DOES 1-3

51. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, and 45, and incorporates them herein by this reference.

52. Defendants John Does 1-3 intentionally acted individually and in concert to cause harmful and offense contact with Plaintiff's body, to wit, tackling Plaintiff.

53. Defendants John Does 1-3 created a reasonable apprehension in the Plaintiff of immediate harmful or offensive contact to the Plaintiff's body because Plaintiff was conscious, aware, and could see the perpetration of her battery.

54. Plaintiff suffered mental anguish and humiliation due to her assault.

55. Plaintiff reserves the right to move for leave to amend Count II to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish and humiliation; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT III

## FALSE IMPRISONMENT AGAINST JOHN DOES 1-3

56. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, and 47-48, and incorporates them herein by this reference.

57. Defendant John Does 1-3 intentionally caused Plaintiff to be restrained against her will.

58. Defendant John Does 1-3 acted without legal authority in restraining Plaintiff against her will.

59. Plaintiff's restraint was unreasonable and unwarranted under the circumstances.

60. Plaintiff suffered mental anguish and humiliation due to her false imprisonment.

61. Plaintiff reserves the right to move for leave to amend Count III to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish and humiliation; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT IV

## NEGLIGENCE AGAINST JOHN DOES 1-3

62. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, 47-49, 52-54, and 57-60, and incorporates them herein by this reference.

63. Defendant John Does 1-3 had a duty to Plaintiff to not cause physical or mental injury.

64. Defendant John Does 1-3 breached that duty because they failed to ensure that their actions and contact with Plaintiff did not cause physical or mental injury.

65. Defendant John Does' 1-3 breach caused the injuries that required medical attention.

66. Defendant John Does' 1-3 conduct was intentional misconduct and a conscious disregard for the physical and mental safety of Plaintiff because they tackled Plaintiff.

67. Plaintiff suffered mental anguish and humiliation due to her battery.

68. Plaintiff suffered mental anguish and humiliation due to her assault.

69. Plaintiff reserves the right to move for leave to amend Count IV to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

a. awarding damages and cost of this action;

b. awarding damages for mental anguish and humiliation; and

c. granting such other relief as the Court may deem just and proper.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST JOHN DOES 1-3

70. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, 47-49, 52-54, and 57-60, and incorporates them herein by this reference.

71. Defendant John Does 1-3 intentionally and recklessly tackled Plaintiff.

72. Defendant John Does 1-3 knew or should have known that their actions would likely result in Plaintiff suffering emotional distress.

73. Defendant John Does' 1-3 conduct was outrageous and is to be regarded as odious and utterly intolerable in a civilized community.

74. Defendant John Does' 1-3 conduct caused Plaintiff to have emotional distress.

75. Plaintiff's resulting emotional distress was severe.

76. Plaintiff suffered mental anguish and humiliation due to her severe emotional distress.

77. Plaintiff reserves the right to move for leave to amend Count V to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT VI

### VICARIOUS LIABILITY AGAINST BAPTIST

78. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, 47-49, 52-54, 57-60, 63-68, and 71-76, and incorporates them herein by this reference and incorporates them herein by this reference.

11

79. Baptist employed Defendant John Does 1-3 at the time of they committed battery, assault, intentional infliction of emotional distress, and were negligent.

80. Defendant John Does 1-3 conducted their actions in the ordinary course of business and during their employment for Baptist.

81. As a result of Baptist's vicarious battery, assault, intentional infliction of emotional distress, and negligence, Plaintiff suffered damages to include physical pain, mental anguish and humiliation.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish and humiliation; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT VI

### CLAIM FOR BREACH OF FIDUDIARY DUTY AGAINST BAPTIST

82. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, 47-49, 52-54, 57-60, 63-68, and 71-76 and incorporates them herein by this reference.

83. Plaintiff, as a patient admitted to Baptist, was entirely dependent upon its staff and employees for her care and well-being. Baptist housed Plaintiff and was responsible for providing all of her daily needs and care. All Plaintiff's personal needs were under control of Baptist. As a result of this dependent relationship, a relationship of trust and confidence existed between Plaintiff and Baptist, such that confidence was reposed by Plaintiff and trust was accepted by Baptist.

84. As a result of such trust and confidence, a fiduciary relationship existed between Plaintiff and Baptist. That fiduciary relationship placed the obligation on Baptist to ensure Plaintiff's safety in its facility, ensure Plaintiff received necessary medical care following her

battery, to ensure that Plaintiff was properly nourished, and ensure that Plaintiff was cared for by properly trained employees.

    85. Baptist breached their fiduciary duty to Plaintiff by:

        a. Failing to ensure that Plaintiff was not battered by Defendant John Does 1-3;

        b. Failing to obtain necessary medical care following Plaintiff's battery by Defendant John Does 1-3;

        c. Failing to properly train its staff and employees to ensure the safety of its patients and obtain necessary medical care for its patients.

    86. In breaching its fiduciary duty to Plaintiff, Baptist placed their interests above that of its patient, the Plaintiff. Baptist was more concerned with minimizing its costs, so as to enhance and maximize its profits, than providing appropriate care to Plaintiff.

    87. Baptist's breach of its fiduciary duty to Plaintiff was the proximate cause of Plaintiff's damages.

    WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

    a. awarding damages and cost of this action;

    b. awarding damages for mental anguish and humiliation; and

    c. granting such other relief as the Court may deem just and proper.

## COUNT VII

### STATUTORY CLAIM UNDER FLORIDA STATUTES §415.1111 NEGLECT OF A VULNERABLE ADULT AGAINST BAPTIST

    88. Plaintiff realleges those allegations contained within paragraphs 1-5, 14-23, 45, 47-49, 52-54, 57-60, 63-68, and 71-76 above and incorporates them herein by reference.

89. Florida Statutes § 415.1111 provides a civil cause of action to a vulnerable adult who has been abused, neglected, or exploited to recover actual and punitive damages for any deprivation of or infringement on the rights of a vulnerable adult.

90. Plaintiff was, at all times during her admission to Baptist, a "vulnerable adult" as defined in Florida Statutes § 415.102(28). At all relevant times, Plaintiff was unable to perform the normal activities of daily living and to provide for her own care or protection because she was impaired due to a mental or emotional disability or dysfunction.

91. The following acts and omissions by agents of Defendant Baptist constituted "abuse" as defined in Florida Statutes § 415.102(1):

   a. The battery at the hands of Defendant John Does 1-3 as alleged in Count I;

   b. The assault at the hands of Defendant John Does 1-3 as alleged in Count II;

   c. The false imprisonment by Defendant John Does 1-3 as alleged in Count III; and

   d. The intentional infliction of emotional distress by Defendant John Does 1-3 as alleged in Count V.

92. The following acts and omissions of Defendant Baptist constituted "neglect" as defined in Florida Statutes § 415.102(16):

   a. Failing to ensure that Plaintiff was not injured during contact with Defendant John Does 1-3.

   b. Failing to immediately obtain necessary medical care following Plaintiff's brutal battery at the hands of Defendant John Does 1-3; and

   c. Failing to properly train its staff and employees to ensure the safety of its patients and to obtain necessary medical care for its patients.

93. As a direct and proximate result of the foregoing abuse and neglect by Defendant Baptist, Plaintiff suffered damages.

94. Plaintiff has retained the services of the undersigned attorney and has agreed to pay a reasonable attorneys fee to prosecute this claim for damages. Florida Statutes § 415.1111, entitles Plaintiff to an award of attorney's fees and costs incurred in prosecuting a civil action for neglect and/or abuse of a vulnerable adult.

95. Plaintiff reserves the right to move for leave to amend Count VII to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

a. awarding damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute § 415.1111; and

b. granting such other relief as the Court may deem just and proper.

## COUNT VIII

### FALSE IMPRISONMENT AGAINST UHS DEFENDANTS, LEPELY, RASHID, CHARBONEAU, JOHN DOES 4-5, JANE DOES 1-5

96. Plaintiff realleges those allegations contained within paragraphs 1-18 and 24-45 above incorporates them herein by this reference.

97. UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 intentionally caused Plaintiff to be restrained against her will.

98. UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 acted without legal authority in restraining Plaintiff against her will because Plaintiff did not meet the criteria for involuntary examination under the Baker Act.

99. Plaintiff's restraint was unreasonable and unwarranted under the circumstances.

100. Plaintiff suffered mental anguish, humiliation, and loss of income, due to her false imprisonment.

101. Plaintiff reserves the right to move for leave to amend Count VIII to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(d) awarding damages and cost of this action;

(e) awarding damages for mental anguish, humiliation, loss of income; and

(f) granting such other relief as the Court may deem just and proper.

## COUNT IX

### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AGAINST UHS DEFENDANTS, LEPELY, RASHID, CHARBONEAU, JOHN DOES 4-5, JANE DOES 1-5

102. Plaintiff realleges those allegations contained within paragraphs 1-18, 24-45, and 97-100 above and incorporates them herein by this reference.

103. 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

104. Plaintiff had a clearly established right to liberty, to be free from unreasonable searches and seizures, and to due process.

105. UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 deprived Plaintiff of her Constitutional rights to liberty, to be free from unreasonable searches and seizures, and right to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

106. Plaintiff was not, during the time of her involuntary confinement, dangerous to herself or others and UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 had no legal basis upon which to continue Plaintiff's involuntary confinement.

107. Plaintiff had not been charged with a crime at the time of her involuntary confinement, nor at any time during his involuntary confinement.

108. Plaintiff should have been released upon her own request pursuant to Florida Statutes § 392.463(2)(i)(1) because she did not meet the clinical requirements for involuntary confinement.

109. Plaintiff suffered mental anguish, humiliation, and loss of income due to her deprivation of liberty, seizure of her person, and due process under the law.

110. Plaintiff reserves the right to move for leave to amend Count IX to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income;

(c) awarding punitive damages in the event this action is removed to a district court of the United States;

(d) awarding litigation costs and reasonable attorney's fees pursuant to 42. U.S.C. §1981; and

(e) granting such other relief as the Court may deem just and proper.

## COUNT X

## VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.103, FLORIDA STATUTES AGAINST UHS DEFENDANTS, LEPELY, RASHID, CHARBONEAU, JOHN DOES 4-5, JANE DOES 1-5

111.  Plaintiff realleges those allegations contained within paragraphs 1-18, 24-45, and 97-100 above and incorporates them herein by this reference.

112.  As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent held Plaintiff illegally and for the purposes of committing fraud upon Plaintiff and her insurance provider.

113.  As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent participated in the scheme to defraud insurance providers of payments that they were not entitled to, and provided material support to the UHS Defendants so that they would receive money for personal use and to fraudulently maximize stockholder equity.

114.  As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, received proceeds derived, directly and indirectly, from their ongoing scheme to defraud insurance providers of reimbursements, both directly and indirectly, and any part of such proceeds, or the proceeds derived from the investment or use thereof, were used in the establishment or operation of the UHS Defendants' enterprise, all in violation of Florida Statute § 772.103(1).

115.  As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. §

1341, and/or 18 U.S.C. § 1349, through their ongoing scheme to defraud insurance providers of reimbursements, acquired or maintained, directly or indirectly, an interest in or control of the UHS Defendants' enterprise, all in violation of Florida Statute § 772.103(2).

116. As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, maintained employment by, or associated with, the UHS Defendants to conduct or participate, directly or indirectly, in the UHS Defendants' ongoing scheme to defraud insurance providers of reimbursements, all in violation of Florida Statute § 772.103(3).

117. As part of the racketeering activity, UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, conspired or endeavored to violate Florida Statute § 772.103(1)-(3) as alleged above, all in violation of Florida Statute § 772.103(4).

118. Plaintiff suffered mental anguish, humiliation, and loss of income due to her deprivation of liberty, search and seizure, and deprivation of due process under the law while UHS Defendants, Lepely, Rashid, Charboneau, John Does 4-5, and Jane Does 1-5 were violating the Florida Civil Remedies For Criminal Practices Act.

119. Plaintiff reserves the right to move for leave to amend Count X to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Michelle Hembrock prays for judgment:

(a) awarding treble damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute § 772.104(1); and

(b) granting such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                      Respectfully Submitted,

                                      THOELE DRACH

BY: _____

                                      **Justin Seth Drach, Esq.**
                                      Florida Bar No. 103016
                                      Email: justindrach@drachlaw.com
                                      **Amanda Marie Thoele, Esq.**
                                      Florida Bar No. 75118
                                      Email:amandathoele@drachlaw.com
                                      Justin Seth Drach, P.A.
                                      5262 Commissioners Drive
                                      Jacksonville, FL 32224
                                      Telephone: (904) 600-4384
                                      Facsimile: (904) 306-1355
                                      *Attorneys for Plaintiff*